# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**JERMAINE DUANE IRVIN**                                                                 **PLAINTIFF**
Reg. #45966-177

**V.**                               **NO. 2:24-cv-146-LPR-ERE**

**GARRETT,** *et al.*                                                                    **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.   Procedure for Filing Objections:**

This Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not object, you risk waiving the right to appeal questions of fact and Judge Rudofsky can adopt this Recommendation without independently reviewing the record.

**II.   Background:**

Jermaine Duane Irvin, a Bureau of Prisons ("BOP") inmate at Forrest City Medium – Federal Correctional Institution ("FCC-FCM"), filed a *pro se* complaint on August 12, 2024, and an addendum on September 5, seeking to bring criminal charges against all FCC-FCM administrative staff and employees for embezzling government funds. *Docs. 1, 5*. In addition, Mr. Irvin alleged that unnamed FCC-

FCM staff had violated his constitutional rights by: (1) failing to provide him seizure medication; (2) denying him fresh air and exercise; and (3) detaining him in the prison's Special Housing Unit ("SHU").

On September 16, 2024, I entered an order advising Mr. Irvin that he lacked standing to bring criminal charges and that his initial pleading failed to allege that a named defendant took action that violated his constitutional rights. *Doc. 13 at 3-8*. In addition, I gave Mr. Irvin thirty days to file an amended complaint with factually related claims supported by allegations explaining how each named Defendant violated his constitutional rights. *Id. at 8-10*.

On September 26, 2024, Mr. Irvin filed an amended complaint,[1] which I have now screened, as required by 28 U.S.C. § 1915A.[2] See *In re Atlas Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) (an amended complaint supersedes an original complaint and renders the original complaint without legal effect). For reasons that

---

[1] Mr. Irvin's amended complaint does not follow instructions set forth in the September 16 Order, and he possibly filed his amended pleading before he received the Order. However, the thirty-day period for filing an amended pleading has expired, and Mr. Irvin has not filed a second amended complaint.

[2] Screening is mandated by the Prison Litigation Reform Act, which requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). When making this determination, the Court must accept the truth of the factual allegations contained in the complaint, and it may consider the documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

follow, the Court should dismiss this action, without prejudice, for failure to state a plausible federal claim for relief.[3]

## III. Discussion:

In his amended complaint, Mr. Irvin sues FCC-FCM officers Warden G. Garrett, Assistant Warden C. Edge, Lieutenant J. Norris, and an unidentified Captain. *Doc. 16 at 1-2*. He sues each Defendant in his or her individual and official capacities and seeks monetary relief.[4]

As an initial matter, Mr. Irvin states that this case involves the same facts at issue in a pending § 2241 habeas action, *Irvin v. Edge*, No. 2:23-cv-00007-DPM-JTK ("*Habeas Case*"), and he cites several documents filed in that case. *Doc. 16 at 2, 4-6*. In his habeas petition, Mr. Irvin seeks release on grounds that the sentencing court lacked subject matter jurisdiction and failed to order a psychological examination. *Habeas Case, Doc. 1*. Any claim challenging the legality of Mr. Irvin's custody or seeking release from imprisonment is not cognizable in this case, which

---

[3] The Court's focus in screening is to assess whether Mr. Irvin has stated a plausible federal claim, as he must to invoke this Court's federal question subject matter jurisdiction. Absent a basis to invoke the Court's subject matter jurisdiction, it is unnecessary to assess whether Mr. Irvin's complaint alleges a plausible state law claim. Assuming, arguendo, that Mr. Irvin had pled a plausible state law claim, the exercise of supplemental jurisdiction should be declined at this early stage of the case. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [state-law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

[4] In his prayer for relief, Mr. Irvin states that he "wishes to conclude this business transaction [through] tax recovery filed as a 'small claim' in International Units with the tax return sent in the form of a cashier's check." *Doc. 16 at 8*.

is limited to claims challenging the conditions of Mr. Irvin's confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment and the relief he seeks is a determination that he is entitled to immediate release or speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

Turning to facts involving the conditions of Mr. Irvin's confinement, his allegations are these.[5] He was placed in handcuffs and confined in SHU after he refused to provide his name to Defendant Norris and refused to provide his registration number to Nurse K. Batchelor.[6] *Doc. 16 at 6*. Mr. Irvin "never received a copy of a detention hearing order signed and dated by the authorizing officer[,]" and he remained in SHU for "40 days and 40 nights." *Id. at 6-7*. During his stay in SHU, Mr. Irvin waited 10 days before he received his seizure medication, he received clean sheets two times and recreation four times, and he was permitted to

---

[5] Legalistic rhetoric runs throughout the amended complaint, making it difficult to identify meaningful allegations and claims. For example, Mr. Irvin states: "[T]he 'governing law' of tis private contract is the agreement of the parties supported by the law merchant and applicable maxims of law." *Doc. 16 at 5*.

[6] Mr. Irvin cites a motion he filed in the *Habeas Case*, complaining that he was placed in SHU on July 27, 2024, after he filed his habeas petition on January 12, 2023. *Habeas Case, Doc. 24*.

make only one phone call to his elderly mother. *Id. at 7*. In addition, reading material and cleaning supplies were not provided as required by prison rules.[7] *Id*.

### A.   *Bivens* Framework

Because Mr. Irvin is a federal inmate, his claims seeking relief for unconstitutional conditions of confinement are governed by *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and its progeny. "[A] *Bivens* action is the federal analog to suit brought against state officials under . . . 42 U.S.C. § 1983." *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006). "An action under Bivens is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials." *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999).

In determining whether Mr. Irvin states a *Bivens* claim, the threshold question is whether his claim is "the type for which a *Bivens* remedy is available." *Farah v. Weyker*, 926 F.3d 492, 497 (8th Cir. 2019). The Supreme Court has previously recognized an implied cause of action under *Bivens* on only three occasions: (1) the *Bivens* case itself, which involved an allegedly unlawful arrest and warrantless

---

[7] The violation of a prison rule or policy, without more, does not amount to the violation of a constitutional right. *Muick v. Reno*, 83 Fed. App'x. 851, 853, 2003 WL 22952703, at *2 (8th Cir. 2003) (citation omitted).

search in violation of the Fourth Amendment; (2) *Carlson v. Green*, 446 U.S. 14 (1980), which involved a failure to treat a prisoner's asthma resulting in his death in violation of the Eighth Amendment; and (3) *Davis v. Passman*, 442 U.S. 228 (1979), which involved gender discrimination in violation of the equal protection component Fifth Amendment's Due Process Clause.

Other than these three cases, "for almost 40 years, [the Supreme Court has] . . . rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). Recognizing that Congress is best positioned to determine whether officers and employees of the federal government should be held liable for constitutional torts, the Supreme Court has branded the expansion of *Bivens* "a disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 675 (2009)).

The Supreme Court has prescribed a two-step inquiry to determine whether a *Bivens* claim is cognizable. Step one requires the Court to ascertain whether the claim in question bears resemblance to one of the three *Bivens* claims the Supreme Court has approved in the past, or whether adjudicating the claim would require extending *Bivens* to a "new context." *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017). "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Id*.

If the claim arises in a new context, step two asks whether there are "'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* (quoting *Carlson,* 446 U.S., at 18). Only if the Court is confident that "'the Judiciary is well suited . . . to consider and weigh the costs and benefits of allowing a damages action' [should it] take it upon [itself] to do so." *Farah*, 926 F.3d at 498 (quoting *Ziglar*, 582 U.S. at 136).

1. **Official Capacity Claims**

A claim against an official of the United States is equivalent to a claim against the United States, and sovereign immunity bars *Bivens* claims against the United States. *Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998) ("[A] *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity."). A "prisoner may not bring a Bivens claim against the . . . BOP." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001). Accordingly, Mr. Irvin's official capacity claims fail to state a claim on which relief may be granted.

2. **Individual Capacity Claims**

a. **Medical Deliberate Indifference**

Of the three Supreme Court cases recognizing a *Bivens* remedy, only *Carlson* is remotely like Mr. Irvin's claim that he went ten days without seizure medication. In *Carlson,* a deceased inmate's estate sued the prison's chief medical officer and personnel for failing to treat the prisoner's asthma. The estate alleged that the inmate

died because the defendants "kept him in a [grossly inadequate] facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contraindicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital." *Carlson*, 446 U.S. at 16, n.1.

In contrast to *Carlson*, Mr. Irvin does not identify an individual who allegedly denied him medical care, and the serious and deadly nature of the alleged violations in *Carlson* are much different than Mr. Irvin's allegation that he went without seizure medication for ten days. !

Any similarities between this case and *Carlson* are superficial, and Mr. Irvin's claim presents a new context to which *Bivens* has not been extended. As such, "a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (citation omitted).

The Supreme Court has never offered an exhaustive list of "special factors" for consideration, but "[i]f there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Id. at 492-93* (cleaned up). One previously recognized special factor is whether "there is an

alternative remedial structure present in a certain case." *Ziglar*, 582 U.S. at 137. "[S]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 596 U.S. 498. This remains true "even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" *Id.*

Here, Mr. Irvin has two potential alternative remedies. First, the BOP's administrative remedy program offers non-judicial remedies that Mr. Irvin may pursue. See *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (noting that administrative review mechanisms provide meaningful redress and foreclose the need to fashion a new, judicially crafted cause of action, even where administrative review does not fully remedy the constitutional violation); see also 28 C.F.R. § 542.10(a) (providing that "[t]he purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement").

Second, Mr. Irvin may assert a claim against the United States under the Federal Tort Claims Act ("FTCA") for medical negligence. The FTCA allows individuals injured by the negligent acts or omissions of federal employees acting within the scope of their employment to recover for their injuries by bringing a claim against the United States. 28 U.S.C. § 2679(b)(1); *Hinsley v. Standing Rock Child*

*Protective Servs.*, 516 F.3d 668, 671-72 (8th Cir. 2008) (citing 28 U.S.C. § 1346(b)). In sum, the FTCA qualifies as a "remedial structure" that provides an avenue for redress. See *Corr. Servs. Corp.*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability."); *Farah*, 926 F.3d 492, 502 (8th Cir. 2019) (noting that remedies that provide no compensation for victims and little deterrence for violators still trigger the general rule that available alternative remedies preclude a Bivens remedy).

Special factors counsel against extending *Bivens* to the new context presented by the particulars of Mr. Irvin's medical deliberate indifference claim. Additionally, even if Mr. Irvin could proceed under *Bivens*, he fails to allege essential facts necessary to state a medical deliberate indifference claim--specifically, that: (1) he had "objectively serious medical needs"[8]; and (2) the Defendant "actually knew of but deliberately disregarded those needs."[9] *Hamner v. Burls,* 937 F.3d 1171, 1177

---

[8] A medical need is objectively serious if it has been "diagnosed by a physician as requiring treatment" or if it is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Barton v. Taber,* 908 F.3d 1119, 1124 (8th Cir. 2018). When a prisoner alleges that a delay in medical treatment has violated his constitutional rights, the "objective seriousness of the deprivation should also be measured 'by reference to the *effect* of delay in treatment.'" *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005); see *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 2001) (a prisoner must demonstrate that the delay in obtaining medical treatment adversely affected his prognosis, or that defendants ignored an acute or escalating situation).

[9] Under the subjective component of an inadequate medical care claim, prison officials may not "deliberately delay or deny prisoners' medical care," but a prisoner "must show more than negligence, more even than gross negligence," to make out a constitutional violation. *Hamner,* 937

(8th Cir. 2019); see also *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016). Mr. Irvin alleges that he was denied seizure medication for ten days, but he alleges no facts regarding his medical condition or showing that a named Defendant was either aware of his need for medication or denied any medication request. See *Hines v. Anderson*, 547 F.3d 915, 920–21 (8th Cir. 2008) (holding that unspecified delays in refilling the prisoner's various prescriptions did not rise to the level of constitutional violation); *Ervin v. Busby*, 992 F.2d 147, 151 (8th (Cir. 1993) (holding that one-month delay in refilling prescription may have been negligent but did not amount to deliberate indifference). In sum, Mr. Irvin's proposed medical deliberate indifference claim, if permitted to proceed as a *Bivens* claim, could not survive screening.

    **b.**    **Detention in SHU**

To the extent that Mr. Irvin claims that his placement in SHU without a disciplinary hearing order violated his right to due process or that the conditions of his confinement in SHU violated the Eighth Amendment, *Bivens* provides no remedy.

---

F.3d at 1177; see *Roberts v. Kopel,* 917 F.3d 1039, 1042 (8th Cir. 2019) (deliberate indifference requires a mental state "akin to criminal recklessness").

The Supreme Court has never recognized a *Bivens* cause for procedural or substantive due process violations,[10] and recognizing a new category of *Bivens* claim for challenging a prisoner's placement in administrative segregation on due process grounds would likely transgress separation of powers principles. First, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Ziglar*, 582 U.S. at 148. The Supreme Court has observed:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. . . . But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

---

[10] The Supreme Court has repeatedly declined to approve a *Bivens* cause of action to redress a procedural or substantive due process violation. *Ziglar v. Abbasi*, 582 U.S. 120 (2017) (rejecting *Bivens* remedy for violation of substantive due process related to detention policy); *Wilkie v. Robbins,* 551 U.S. 537, 547–548 (2007) (rejecting *Bivens* remedy for due process violations related to harassment of rancher by Bureau of Land Management officials); *Schweiker v. Chilicky,* 487 U.S. 412, 414 (1988) (rejecting *Bivens* remedy for violation of procedural due process related to improper denial of Social Security benefits); *United States v. Stanley,* 483 U.S. 669, 671–672 (1987) (rejecting *Bivens* remedy for substantive due process violations by military officers related to secret administration of LSD).
    Even if Mr. Irvin could proceed under *Bivens*, he fails to allege facts indicating that his 40-day detention in SHU deprived him of a liberty interest protected by the due process clause, which is essential to sustain a due process claim. Absent conditions that impose "atypical and significant hardship . . . in relation to the ordinary incidents of prison life[,]" administrative segregation does not deprive a prisoner of a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 486 (1995).

*Ziglar*, 582 U.S. at 148–49; see also *Staszak v. United States*, 2021 WL 11959351, at *2 (E.D. Ark. Oct. 6, 2021) (concluding that the absence of a standalone damages remedy in the PLRA qualifies as a special factor counseling against extending Bivens to the plaintiff's retaliation and conditions of confinement claims), *report and recommendation adopted*, 2023 WL 6142368 (E.D. Ark. Sept. 20, 2023). Second, as previously explained, the BOP's administrative remedy program offers Mr. Irvin a non-judicial remedy allowing review of any issue regarding his confinement.

The same special factors/separation of powers concerns preclude a *Bivens* remedy to address Mr. Irvin's allegations regarding the conditions of his confinement in SHU—specifically that he received limited phone privileges and recreation opportunities, received clean sheets only two times, and was not provided reading material in violation of prison rules and policy.[11]

### IV.  Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

---

[11] Even if *Bivens* were extended to cover all Eighth Amendment conditions-of-confinement claims, to present a plausible claim, Mr. Irvin must allege facts which, taken as true, support a reasonable inference that he suffered a serious deprivation of "the minimal civilized measure of life's necessities" and the "offending conduct [was] wanton." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Mr. Irvin fails to allege facts suggesting that any named Defendant either: (1) denied him any of life's necessities; or (2) disregarded an excessive risk to his health or safety.

1. Mr. Irvin's amended complaint, *Doc. 16*, be DISMISSED, without prejudice, for failure to state a plausible constitutional claim for relief.

2. The Court recommend that, in the future, this dismissal be considered a "strike" for purposes of 28 U.S.C. § 1915(g) and certify that an in forma pauperis appeal of this dismissal would be frivolous and not taken in good faith.

3. The Clerk be instructed to close this case.

DATED 21 November 2024.

_____
UNITED STATES MAGISTRATE JUDGE